# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**DAVID CHRISTINA,**         :
         **Plaintiff,**        :
        :
**v.**                 :         **No. 3:14cv1063 (WWE)**
        :
        :
**CHUBB & SON, INC.,**        :
         **Defendant.**       :

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In his complaint, plaintiff David Christina asserts that defendant Chubb and Son discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"); and retaliated against him in violation of Connecticut General Statutes § 31-290a.[1]

Defendant has filed motion for summary judgment on all counts against it. For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I. BACKGROUND

The parties have submitted statements of facts, exhibits and affidavits. These submissions along with the pleadings reveal the following facts.

Commencing in 2002, plaintiff worked for defendant as a Personal Lines Appraiser and reported to his supervisor, Scott Harold. Plaintiff worked from his home

---

[1] Section 31-290a prohibits an employer from discharging or "in any manner" discriminating against an employee based on that employee's filing of a workers' compensation claim.

and in the field in Connecticut and other states.

Plaintiff asserts that he suffers from degenerative disc disease, herniated discs in the lumbar and cervical areas of his back, acute traumatic bilateral carpal tunnel syndrome, metabolic syndrome, depression, obsessive compulsive disorder, and post traumatic stress disorder.

In January 2012, plaintiff was involved in a motor vehicle accident in his company assigned car. He took a leave of absence and also initiated a workers' compensation claim related to that accident through defendant's internal processor. Plaintiff alleges that Harold commented that filing a workers' compensation claim was not good for an employee's career.

In February 2012, plaintiff suffered an injury outside of work and took another medical leave of absence.

In March 2012, plaintiff suffered another injury outside of work and took a leave of absence. When plaintiff returned to work, he requested accommodations and provided medical documentation that supported his request for a one-week period of no driving and a limitation of four hours per day of typing. Defendant approved these requests for accommodation.

In May 2012, plaintiff underwent surgery and took a medical leave of absence from May 9 to August 10, 2012.

In August 2012, a week after returning to work from his leave of absence, plaintiff had a car accident and could not return to work until October 15, 2012.

Plaintiff asserts that in August 2012 he filed a second workers' compensation claim and that in October 2012 he contacted defendant's Voice of the Employee to

2

express his belief that he was being penalized for taking medical leave of absences.

By October 15, 2012, plaintiff's doctor had released plaintiff to work without restrictions. At the time of plaintiff's return, Harold had increased from two to three days per week the number of travel days for all of his Personal Lines Appraisers.

Plaintiff maintains that, after he returned from his leave of absence, he was treated less favorably by Harold and Ellen Long, a Human Resources manager.

In an email dated October 24, 2012, Harold advised plaintiff that he should contact Long if he felt unable to perform his duties.

Between October 15 and October 31, 2012, plaintiff did not complete any appraisal reports. On November 5, 2012, Harold met with plaintiff to discuss why plaintiff had failed to complete his appraisal reports. In an email dated November 5, 2012, plaintiff wrote to Harold and Long that it was his "responsibility to get back up to speed, meet deadlines, respond to customers, agents, management, UW, etc. in a more timely, pleasant and professional manner."

In November 2012, plaintiff requested that his doctor approve a medical accommodation of "no driving from 11/19 thru 11/27/2012." Plaintiff knew that defendant's accommodation request process required his doctor's medical certification to support his requested driving restriction. He attached Chubb and Son's Medical Accommodation Request Form to the email.

Defendant did not receive an accommodation request form from plaintiff or his doctor in either November or December 2012. Plaintiff maintains that he informed defendant of his request both orally and in writing and advised defendant that his physician had attempted to submit the Medical Accommodation Request form.

3

In an email to his physician dated November 19, 2012, plaintiff wrote: "All and all I could probably keep going like this a bit longer but the possibility of injuring someone other than myself as I attempt to meet my increased goals which entails driving 2,600 plus miles a month is a bad risk to take.  The basic functions of my job are what seem to aggravate lower lumbar, cervical areas, shoulder and arm, not to mention the broken thumb and crushed middle finger hinder my typing and accuracy."

As of December 2012, plaintiff had a significant backlog of appraisal reports.  On December 4, one of defendant's senior appraisers, Lina Marunas, audited plaintiff's reports and found several that did "not meet key pieces" of defendant's underwriting guidelines.  She also noted that plaintiff's worksheets, which she identified as critical, lacked "key pieces of information." Plaintiff maintains that his mistakes are attributable to his lack adequate training on the appraiser report writing system ("ARWS") that was implemented while he was absent on medical leave.

On December 4, plaintiff informed defendant that his doctor had attempted to submit the Medical Accommodation Request form but had sent it to the wrong number.  On December 7, 2012, Long asked plaintiff what modification he needed to perform the essential functions of his job.  Plaintiff requested that defendant (1) relieve him temporarily of driving and on-site appraisal responsibilities so that he could "catch up" on his backlog of reports; (2) provide him with estimates of the time he needed to catch up on his reports; and (3) provide him with help from Harold to prioritize the backlogged reports.  Defendant granted these accommodations.

In a document entitled Summary of Accommodation and Performance Conversation, Long informed plaintiff that his "results need[ed] to change immediately."

4

She stated: "[W]e want to make it very clear that if you do not show immediate and sustained improvement in your performance, your employment may be terminated." She further recommended that, if he could not perform because of a medical condition, he should discuss his work expectations with his doctor and let defendant know about any medical limitations.

Harold provided plaintiff with a list prioritizing the outstanding reports. He provided plaintiff with a deadline of December 14, 2012, for certain reports and a final deadline of December 17, 2012. By December 17, plaintiff still needed to complete a third of his reports.

Harold requested that Marunas check the reports that plaintiff had completed. She reported: "Poor results. The months that were audited show major deviations from the ARWS that impact the underwriting of the risks." She recommended that one of the reports be pulled. She informed Harold that plaintiff's reports contained errors, including his indication that a roof was 146 years old, although the type of shingle on the roof did not exist 146 years ago.

In a document entitled Request for Employee Relations Authority dated December 18, 2012, to Rebecca Braitling, Employee Relations Manager; Long outlined plaintiff's employment history and failure to provide timely appraisal reports despite accommodations. She noted that the decision was afforded "extra scrutiny and indulgence because David had made an internal complaint and because he had been on medical leave several times." The document indicated that the request for approval to terminate plaintiff's employment was made in collaboration with Harold and Ron Arigo, a senior manager with defendant's Human Resources Department.

5

On December 18, 2012, after the request for termination approval had been sent to Braitling, plaintiff advised defendant that he had been certified by his doctors as unable to work and was going to need another medical leave of absence.  Defendant's email seeking approval of plaintiff's leave request indicated that plaintiff would commence his leave on December 18, 2012, and return to work on January 4, 2013. Braitling approved of plaintiff's termination after plaintiff informed defendant of his medical need for a leave of absence.  The parties dispute whether the final decision to terminate plaintiff was made on December 18, 2012, as opposed to December 19, 2012.

Plaintiff applied for short-term disability extending from December 18, 2012, through January 4, 2013.  He received short-term disability and then later received long-term disability benefits.

In July 2014, plaintiff still experienced neck pain despite his surgeon's opinion that he had reached maximum medical improvement of certain conditions.

As of October 30, 2015, plaintiff had not yet been cleared to work by his doctors.

## II.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material

factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

A.    Disability Discrimination

Plaintiff alleges that defendant violated the ADA and the CFEPA by terminating his employment due to his disability, denying him reasonable accommodations in connection with his alleged disabilities, and by retaliating against him.

Reasonable Accommodation

Defendant maintains that plaintiff's own admissions establish that he was not otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; that plaintiff caused the interactive process to fail; and that he has failed to establish a wrongful denial of an accommodation.

To survive a motion for summary judgment on a reasonable accommodation claim, plaintiff must show evidence for a reasonable jury to find (1) that he is disabled within the meaning of the statute; (2) that he was able to perform the essential functions of the job with or without reasonable accommodation; and (3) that defendant, despite

7

knowing of plaintiff's disability, did not reasonably accommodate plaintiff's disability. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (ADA); Curry v. Allan S. Goodman, 286 Conn. 390, 415 (2008) (CFEPA).  If the employee makes such a prima facie showing, the employer must show that such an accommodation would impose an undue hardship on its business.   Tilman v. Verizon New York, Inc., 2015 WL 4603372, *21 (E.D.N.Y. 2015) (ADA); Curry, 286 Conn. at 415 (CFEPA).[2]

Determining what is a reasonable accommodation requires an inquiry into the benefits of the accommodation and the costs as well.  Bokowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995).  An accommodation is reasonable if it is feasible for the employer to provide the accommodation.  Curry, 286 Conn. at 419.  A reasonable accommodation can never involve the abrogation of the employee's responsibility for an essential function of the job.  Shannon v. New York City Transit Authority, 332 F.3d 95, 100 (2d Cir. 2003) (ADA); Ahmad v. State Dept. of Transp., 2015 WL 897478, *3 (Conn. Sup. Ct. 2015) (CFEPA).  An essential function is considered to be a fundamental duty to be performed in the position rather than a marginal function.  Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 202 (D. Conn. 2013) (ADA).  "A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  Shannon, 332 F.3d at 100.

---

[2]Generally, the same standards are applied to ADA and CFEPA discrimination claims.  Ferrante v. Capitol Regional Educational Council, 2015 WL 1445206, *4 (D. Conn. 2015).

Defendant asserts that plaintiff is not covered by the ADA or CFEPA because he admitted that he was not qualified to perform the essential functions of his job, namely driving three days per week to site appraisals and providing timely appraisal reports.[3] Plaintiff has admitted that his physicians have yet to provide him with a release to work, and he does not know when he will obtain such release.  In his deposition, plaintiff indicated that he has not applied for any subsequent position due to the lack of release for work.

Plaintiff requested that he be temporarily relieved of driving to sites to conduct such appraisal so that he could complete his backlog of appraisal reports, but plaintiff has not offered any reasonable justification for how he could perform the essential functions of his position when he has not yet been released to work.

Plaintiff maintains that defendant should have afforded him the following reasonable accommodations: (1) the leave of absence that he requested "to get his carpal tunnel syndrome under control"; (2) a reduction in his driving duties; and (3) assignments covering other appraisers' office days on a temporary basis rather than terminating his employment for failure to meet performance expectations.

Plaintiff does not bear a heavy burden to demonstrate a reasonable accommodation but must suggest the "existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."  McMillan v. City of New York, 711 F.3d 120, 127 (2d Cir. 2013).  A temporary leave of absence may constitute a reasonable accommodation; however, "an employer is not required to place an

---

[3]Plaintiff does not appear to dispute defendant's characterization of the essential functions of the job.

employee on an indefinite leave, awaiting the day when the employee might recover sufficiently from his disability to return to work." Dansler-Hill v. Rochester Institute of Technology, 764 F. Supp. 2d 577, 583 (W.D.N.Y. 2011).  Generally, "a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work."  Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 186 n.6 (2d Cir. 2006).

Here, plaintiff did not request an indefinite leave of absence in December 2012. However, he admits that his pain in his neck and spinal cord would have prevented him from driving three days a week during the three months of 2013; further, as of October 2015, plaintiff had still not been cleared to work.  Plaintiff has not adduced evidence suggesting that the reasonable accommodation of the requested leave of absence would have enabled him to return to work and perform the essential functions of his position. Plaintiff has also failed to raise an inference of any other reasonable accommodation that would have facilitated his performance of his essential work functions after December 18, 2012.  The Court will grant summary judgment in defendant's favor on the reasonable accommodation claim

Defendant has also argued for entry of summary judgment on the ground of plaintiff's failure to cooperate with the interactive process required by the ADA.  The interactive process was envisioned to be a process where "employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  Noll v. Int'l Bus Machines Corp., 787 F.3d 89, 98 (2d Cr. 2015).  As part of the interactive process, an employer is entitled to request that the employee provide documentation of his disability and the appropriate accommodations for the

disability.  Quadir v. New York State Department of Labor, 2016 WL 3633406 at 4 n.3 (S.D.N.Y. June 29, 2016).   ADA liability does not follow where an employee has failed to provide documentation sufficient to allow the employer to assess the employee's need for a reasonable accommodation.  Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008).  It is undisputed that defendant informed plaintiff of the requirement to submit medical documentation and how to satisfy defendant's accommodation process.  However, plaintiff failed to follow defendant's accommodation request process by neglecting to submit medical documentation for the accommodations that he now maintains defendant failed to provide for him.

Plaintiff has failed to address this argument in his opposition to summary judgment.  Absent objection and upon review of the merits, the Court finds summary judgment is also appropriate based upon plaintiff's failure to satisfy the interactive process.  See Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)

Disparate Treatment

Plaintiff asserts that he was subject to disparate treatment on account of his disability.  Defendant maintains that plaintiff cannot prevail on his disparate treatment claim because he is not otherwise qualified and defendant had a legitimate reason to terminate his employment.

Pursuant to the ADA, a plaintiff must establish that (1) the employer is subject to the ADA; (2) he is an individual who has a disability within the meaning of the statute; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d

11

Cir. 2006).  ADA claims are subject to the familiar burden-shifting analysis of

McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  If plaintiff establishes a

prima facie case, defendant must articulate a legitimate, non-discriminatory business

reason for the alleged discriminatory action.  Plaintiff must then prove by a

preponderance of the evidence that the supposed legitimate reason is actually pretext

for discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Consistent with the Court's discussion relevant to his reasonable

accommodation claim, plaintiff has not shown that he is covered by the ADA as an

otherwise qualified individual.  Further, plaintiff has failed to adduce evidence that

defendant's proffered reason for his termination – poor performance, including

inaccuracies and failure to remedy his backlog of reports – was pretext for disability

discrimination.  The record indicates that defendant had provided plaintiff with

accommodations and other remedial measures to assist his performance prior to

seeking his termination.  Accordingly, the Court will grant summary judgment in

defendant's favor on this claim.

### B.  Retaliation

Plaintiff asserts that he suffered retaliation in violation of the ADA, the CFEPA

and Connecticut General Statutes § 31-290a after he filed his second worker's

compensation claim and made his internal complaint to defendant's Voice of the

Employee.[4]  He maintains that defendant's retaliatory conduct included his termination,

---

[4]Generally, Section 31-290a is subject to the same burden shifting frame work as the ADA or CFEPA retaliation claims. See Consiglio v. Montano Cigarette, 2014 WL 783471 (Conn. Super. Ct.) (discussing analysis of Section 31-290 and that Connecticut Supreme Court has not adopted the but-for causation standard.).

a failure to accommodate his disability, and failure to comply with its own policies regarding performance improvement.[5]

In order to establish a prima facie case of retaliation, plaintiff must show that "(1) the employee was engaged in an activity protected by the federal disability statute, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).  In the context of retaliation, the applicable standard for adverse employment action is broader than that applied to discrimination claims.  Santiesteban v. Nestle Waters North America, Inc., 61 F. Supp. 3d 221, 241 (E.D.N.Y. 2014).  A "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 68 (2006).  Actions that are "trivial harms" such as "petty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse.  Id. at 68.

If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-retaliatory reason for the challenged employment decision; plaintiff must then "point to evidence that would be sufficient to permit a rational factfinder to conclude that the

---

[5]To the extent that plaintiff challenges defendant's handling of his claim for long-term benefits through his CFEPA retaliation claim, such claim is subject to preemption by the Employee Retirement Income Security Act ("ERISA").  See Perrelli v. Prudential Ins. Co., 2008 WL 4307103, at *1-3 (D. Conn. Sept. 19, 2008) (preemption of state causes of action brought with respect to benefits governed by ERISA plan).

employer's explanation is merely a pretext for impermissible retaliation."  Treglia v.
Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002).

The three-day per week travel requirement, which applied equally to all Personal
Lines Appraisers, does not constitute a retaliatory action.  See Nugent v. St
Luke's/Roosevelt Hospital Ctr., 2007 WL 1149979, at *11 (S.D.N.Y. April 18, 2007).

Plaintiff maintains that Long and Harold afforded him a lower level of empathy,
accelerated production expectations, exhibited "a very frosty, cold manner," and
communicated by email rather than telephone calls after he returned from medical
leave in October 2012.  Although an employer-orchestrated social isolation during work
hours may well influence an employee's decision whether to make or support a charge
of discrimination, See Flowers v. Northern Middlesex YMCA, 2016 WL 1048751, *8 (D.
Conn. March 11, 2016), plaintiff's sense of a retaliatory tone towards him appear to be
the type of annoyances that often occur in the work place and do not rise to the level of
material adverse retaliatory action. See Jaeger v. North Babylon Union Free School
District, 2016 WI 3198276 (D. Conn. June 7, 2016) (Workplace slights including
monitoring, criticism, and questioning of employee regarding policy violation were not
materially adverse.).

Nevertheless, the Court finds that plaintiff has established a prima facie case.
Plaintiff engaged in protected activity and suffered the adverse action of termination.[6]
His termination occurred approximately two and four months, respectively, after his

---

[6]It remains a question for the jury whether defendant's deadline for plaintiff to
complete his appraisal reports along with its decision to deny plaintiff's request to work
weekends constitutes retaliatory adverse actions.

complaint to Voice of the Employee and his second workers' compensation filing, which represents sufficient temporal proximity to establish a causal connection.  See Gorman-Bakos v. Cornell Co-op Extension of Schenectedy County, 252 F.3d 545, 554 (2d Cir. 2001).

Defendant maintains that it set reasonable deadlines for plaintiff to complete his appraisal reports and terminated him for the legitimate reasons of poor performance and failure to improve.  However, the Court must construe the inferences of fact in the light most favorable to plaintiff.  in light of the close proximity between the protected conduct and the asserted retaliatory conduct, the Court finds that whether defendant acted with a retaliatory animus is a question of fact for the jury.  The Court will leave plaintiff to his proof.

### III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [ECF No. 38] is GRANTED as to plaintiff's claims of ADA and CFEPA discrimination based on disparate treatment and failure to accommodate, but is DENIED as to plaintiff's claims of retaliation in violation of the ADA, CFEPA and Connecticut General Statutes § 31-290a.

Dated this 27th day September, 2016, in Bridgeport, Connecticut.


 /s/Warren W. Eginton
Warren W. Eginton
Senior United States District Judge